THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RICARDO RIVERA,**  *Plaintiff*,  v.  **COSTCO WHOLESALE CORPORATION,**  *Defendant.* | Civ. No. 23-01321 (MAJ) |

**OPINION AND ORDER**

**I.    Introduction**

On June 14, 2023, Ricardo Rivera ("Plaintiff") appearing pro se, filed the instant action against Costco Wholesale Corporation ("Costco") under 42 U.S.C. § 1981 ("Section 1981"); the Puerto Rico Civil Rights Act, Law No. 131 of May 13, 1943, as amended, P.R. Laws Ann. tit. 1 § 13; and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141.[1] (**ECF No. 1**). Pending before the Court is Costco's Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").[2] (**ECF No. 12**). For the reasons stated hereafter, Costco's Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1]    Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code came into effect in 2020. Article 1536, however, contains the same elements as its predecessor, thereby leaving the tort statute practically unchanged. Therefore, all caselaw referencing or analyzed under the now defunct Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020. *Dumanian v. FirstBank Puerto Rico*, 22-cv-1543, 2024 WL 197429, at *3 (D.P.R. Jan. 17, 2024).

[2]    Also before the Court are Plaintiff's Response (**ECF No. 59**), Defendant's Reply (**ECF No. 63**), and Plaintiff's Sur-reply (**ECF No.78**).

## II. Factual Background

Plaintiff is an Afro-Caribbean man and resident of the Commonwealth of Puerto Rico. (**ECF No. 1 at 1 ¶ 2**). Costco is a corporation organized and existing under the laws of the state of Washington. *Id.* ¶ 8. Costco operates a chain of membership-only warehouse store locations, where customers can purchase a wide variety of goods. *Id.* at 3 ¶ 10. Plaintiff alleges he has been an "on and off member" of Costco since early 2010. *Id.* 3 ¶ 11.

On or about December 5, 2022, Plaintiff visited Costco's San Juan location to purchase food items. *Id.* ¶ 12. Once at the cash register, Plaintiff alleges he was informed he was in possession of his spouse's membership card. *Id.* ¶ 13. Moreover, Plaintiff's own membership status appeared as inactive, "for reasons unknown to him." *Id.* ¶ 14. Plaintiff alleges the Assistant Warehouse Manager ("AWM") thereafter retained possession of his spouse's membership card. *Id.* ¶ 15. He was unable to complete his transaction, and instead asked the AWM to return his spouse's card to him. *Id.* ¶ 16., which the AWM "abruptly and inappropriately refused" to do. *Id.* ¶ 17. More specifically, he alleges she stated something to the effect of "I don't know if it is stolen."[3] *Id.* at 4 ¶ 18 (cleaned up). Plaintiff contends this "inappropriate remark" was said in front of other employees and customers, causing him to be "shocked, offended[,] and disturbed . . . ." *Id.* ¶ 19.

Thereafter, Plaintiff alleges he stated (in Spanish), "Either you give me the card back or I'll report you for theft." *Id.* ¶ 21. He alleges his wife's card was reluctantly returned

---

[3]   Plaintiff alleges this interaction took place in the Spanish language and translates the comment himself to English in his Complaint.

to him, after which he left the store feeling "horrified, humiliated, and extremely alarmed at [the] AWM's accusation against him." *Id*. ¶ 22.

On or about December 7, 2022, Plaintiff alleges both he and his spouse visited Costco once again and re-activated his membership status, where he received a new membership card. *Id*. ¶ 23.

On or about December 8, 2022, Plaintiff alleges he sent an internal complaint by electronic mail to both "cjelinek@costco.com" and "customerservice@costco.com" detailing the purported racial discrimination he experienced at the San Juan store. *Id*. ¶ 25. Thereafter, he alleges that on or about December 10, 2022, the AWM left a voicemail on his spouse's phone informing Plaintiff of her decision to terminate his membership contract. *Id*. at 5 ¶ 26.

"In hopes of a favorable response," Plaintiff forwarded a copy of his internal complaint to Derek Snead, an attorney allegedly employed by Costco. *Id*. ¶ 27. To Plaintiff's surprise, he alleges that Mr. Snead provided Plaintiff "with a whole different set of reasons than previously claimed by the AWM for the termination of the membership." *Id*. ¶ 28. The Complaint does not allege which reasons were provided by Mr. Snead. Instead, Plaintiff simply maintains that when questioned by Mr. Snead, the AWM conjured up false and pretextual reasons for the termination of his membership, inconsistent with her prior recorded disclosure. *Id*. ¶ 29. Plaintiff contends the aforementioned conduct would not have occurred but for his race and internal complaint. *Id*. ¶ 30. He has since requested reinstatement of his membership twice, to no avail. *Id*. ¶¶ 32-35. As a result, Plaintiff maintains he has suffered and will continue to suffer emotional distress in various forms, and requests compensatory and punitive damages, as well as declaratory relief. *Id*. at 10.

### III. Legal Standard

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), federal courts use a two-step method based on the plausible, not just possible, standard set forth in *Twombly* and *Iqbal. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under this approach, a court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (2012). A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court need not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023).

Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d 50, 55 (first citing *Ocasio-Hernández*, at 12; and then citing *S.E.C. v. Tambone*, 597 F.3d 436, 441–42 (1st Cir. 2010)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the court] 'to draw on' its 'judicial experience and common sense.'" *Id*. (citing *Iqbal*, at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Twombly*, 550 U.S. at 545, 556.

The First Circuit Court of Appeals, in *Ocasio-Hernández* held that a "'complaint should be read as a whole, not parsed piece by piece to determine whether each allegation,

in isolation, is plausible.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14-15 (1st Cir. 2011) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). The First Circuit, explained that the "make-or-break standard" for determining whether a complaint states a claim is whether "the combined allegations, taken as true … state a plausible, not merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12. (internal quotations omitted). *Ocasio-Hernández* makes it clear that plaintiffs are not required to allege every single fact that supports their claim in their complaint. *Id.* at 13. "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Id.* at 12.

A complaint that rests on "'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like'" will likely not survive a motion to dismiss. *Niagara Bottling, LLC v. CC1 LP*, 381 F. Supp. 3d 175, 181 (D.P.R. 2019) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir. 2011). "[P]ure speculation is not" given credit at the motion to dismiss phase. *Id.* at 596; *see Méndez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir. 2010) (*Twombly* and *Iqbal* standards require district courts to "screen[ ] out rhetoric masquerading as litigation.").

## IV. Applicable Law and Analysis

### A. Federal Law Claims

As an initial matter, the Court is mindful that pleadings filed by pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" and their filings are construed "liberally." *Castro v. Aponte-Dalmau*, 243 F. Supp. 3d 199, 201 (D.P.R. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations

omitted). To that end, the Court observes both parties have seemingly conflated what the Court perceives to be two distinct claims under Section 1981, namely discrimination *and* retaliation.[4] (**ECF No. 1 at 7**). Count I is titled "Section 1981 — Unlawful Discrimination *and Retaliation* on the Basis of Race." *Id.* While not explicitly mentioned under that count, Plaintiff alleges that the termination of his membership occurred because of the filing of his internal complaint, which alleged racial discrimination.[5] *Id.* at 4 ¶¶ 25-31. Although Costco addresses Count I in their Motion, its analysis focuses solely on discrimination under § 1981, not retaliation. The Court, therefore, will not construe their Motion to move for dismissal of Plaintiff's § 1981 retaliation claim.

### a. Count I: Discrimination and Retaliation under 42 U.S.C. § 1981

Moving to Plaintiff's § 1981 discrimination claim, § 1981 provides for equal rights under the law. *See* 42 U.S.C. ¶ 1981. It states in relevant part that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." *Alston v. Spiegel*, 988 F.3d 564, 572 (1st Cir. 2021) (quoting 42 U.S.C. § 1981). Section 1981 thus "affords relief when racial discrimination precludes a plaintiff from entering a contractual relationship or when racial discrimination impairs a plaintiff's existing contractual relationship." *Id.* (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). Notably, "a plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." *Dames v. JP Morgan Chase & Co.*, 22-

---

[4] Section 1981 "prohibits retaliation against those who oppose [] discrimination [as proscribed under § 1981]." *Alston v. Spiegel*, 988 F.3d 564, 572 (1st Cir. 2021) (citing *Univ. of. Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 355 (2013)) (cleaned up). The Court notes that while § 1981 retaliation claims in the non-employment context are "exceedingly rare," they are possible. *Zastrow v. Houston Auto Imports Greenway Ltd.,* 789 F.3d 553, 564 (5th Cir. 2015).
[5] The Court makes no determination as to the sufficiency of this allegation with regards to a potential § 1981 retaliation claim.

Case 3:23-cv-01321-MAJ   Document 80   Filed 06/05/24   Page 7 of 14
Civ. No. 23-01321 (MAJ)                                                                            Page 7

cv-6962, 2023 WL 5047776, at *3 (E.D.N.Y. Aug. 8, 2023) (citing *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015)).

To that end, to state a discrimination claim under Section 1981, a plaintiff must show: (1) "that he is a member of a racial minority"; (2) "that the defendant discriminated against him on the basis of his race"; and (3) "that the discrimination implicated [his] right to make and enforce contracts." *Id*. It is undisputed that Plaintiff is a member of a racial minority group, therefore the Court will only address the second and third elements of a 1981 claim.

"As a preliminary matter, 'any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights.'" *Alston,* 988 F.3d at 572 (quoting 42 U.S.C. § 1981) (internal citations omitted). Plaintiff "must allege that he was actually denied the ability to either make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus." *Folly-Notsron v. 180 Broadway Liquor Inc.*, 22-cv-11983, 2023 WL 3958453, at *3 (D. Mass. Apr. 27, 2023), *report and recommendation adopted*, 22-cv-11983, 2023 WL 3984159 (D. Mass. May 16, 2023) (citing *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2002)). Here, the Court—in liberally construing the Complaint—identifies the denial of service in the store and termination of Plaintiff's membership as the impaired contractual relationships in question. (**ECF No. 1 at 4 ¶ 25**); *Id*. at 7 ¶ 44; *Folly-Notsron,* 2023 WL 3958453, at *3.

Turning to the second element, "discriminatory intent may be alleged explicitly via direct evidence, or implicitly by way of circumstantial evidence that supports an inference of discrimination." *Dames,* 2023 WL 5047776, at *3 (citing *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001)). "An inference of discrimination may be drawn through

observation of similarly situated individuals who are not members of the relevant protected class being treated differently than plaintiffs." *Id.*

For instance, in *Burns v. SeaWorld Parks & Ent., Inc.*, the plaintiffs successfully alleged discriminatory intent by alleging that "costumed performers appearing as various Sesame Street characters" ignored their children while interacting with "similarly situated white customers and their children." 675 F. Supp. 3d 532, 537 (E.D. Pa. 2023) (internal quotations omitted); *see also Don v. Equinox Brickell, Inc.*, 20-cv-25322, 2021 WL 2453150, at *2 (S.D. Fla. June 16, 2021) (finding the allegation that the general manager at issue gave the plaintiff "dirty looks" and "terminated his discounted gym membership without cause, while white members were allowed to enjoy their memberships" sufficiently pled for purposes of discriminatory intent).

Conversely, the plaintiff in *Ortiz-Rosario v. Toys "R" Us Puerto Rico, Inc.*, failed to adequately plead discriminatory intent because her complaint was "devoid of any factual allegations that state that [she] was called names, racial epithets, mistreatment due to racial origin, [or] harassment due to racial origin . . . ." 585 F. Supp. 2d 216, 227 (D.P.R. 2007). While the Court sympathized with the plaintiff's experience and found it "deplorable" that she was wrongfully accused of theft, it ultimately found that it was only *conceivable* and not *plausible* that she was accused *only* because she was a black woman, based off of her allegations. *Id.*; *Ocasio-Hernández*, 640 F.3d at 12 (The First Circuit has explained that the "make-or-break standard" for determining whether a complaint states a claim is whether "the combined allegations, taken as true … state a plausible, not merely conceivable, case for relief.") (internal quotations omitted); *see also Jarvis v. Wells Fargo Bank, N.A.*, 21-cv-0687, 2022 WL 1663568, at *4 (D. Md. May 25, 2022) (finding

allegation that the defendant "denied his request to open an account and refused to accept his check because of his race" insufficiently pled for purposes of the second element).

### i. Denial of Store Service

Here, Plaintiff alleges he was unable to complete his purchase at Costco's property. (**ECF No. 1 at 3 ¶ 16**). However, other than asserting in a conclusory manner that this "would not have occurred but-for [his] race," there is nothing in the Complaint that plausibly alleges discriminatory intent on the part of Costco. *Id*. at 5 ¶ 30; *see Veal v. Comm'r of Bos. Centers for Youth & Fams.*, 21-cv-10265, 2022 WL 715712, at *4 (D. Mass. Mar. 10, 2022) (finding same); *Jarvis,* 2022 WL 1663568, at *4 (". . . specific, factual allegations [are] required to plausibly allege discriminatory intent."). Neither party disputes that Costco is a membership-only establishment, and Plaintiff did not possess an active membership card at the time of purchase. Plaintiff was not subject to any racial comments, nor has he alleged similarly situated white customers were given different or more favorable treatment. *Ortiz-Rosario,* 585 F. Supp. 2d at 227; *see also Dames,* 2023 WL 5047776, at *3 ("Nowhere in the Amended Complaint does the [p]laintiff clearly allege that any employee of [the defendant] mentioned his race—much less communicated explicit discriminatory intent—or that he observed himself being treated dissimilarly to [the defendant's] similarly situated non-black customers."). The AWM's comment that the card might be stolen, alone, does not sufficiently allege discriminatory intent for purposes of a § 1981 claim. Simply put, even though Plaintiff was denied the ability to purchase goods in the store, there is nothing to suggest that Plaintiff's race was the "but-for" reason behind this denial. *See Veal,* 2022 WL 715712, at *4 (finding same); *cf., Don v. Equinox Brickell, Inc.*, 2021 WL 2453150, at *2. Accordingly, he has not

sufficiently alleged discriminatory intent, and his § 1981 discrimination claim based on the incident in the store is **DISMISSED WITH PREJUDICE.**

### ii. Termination of Membership

Plaintiff's § 1981 discrimination claim based on the termination of his membership similarly fails. In alleging the termination was based on his race, Plaintiff simply states that the "AWM notified Plaintiff of her decision to terminate his membership contract by leaving a voice message in his spouse's voicemail," and that she "made up false and pretextual reasons for the termination of Plaintiff's membership when questioned by Mr. Snead." (**ECF No. 1 at 5 ¶¶ 26, 29**). He does not provide any additional insight as to what was stated in the voicemail left by the AWM, nor what Costco's purported attorney provided as justification that would support the contention the decision was based on race. Accordingly, these allegations are wholly conclusory, and do not rise to a plausible claim of discrimination based on race under § 1981. *See Dames,* 2023 WL 5047776, at *3 ("[A] plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss.") (citing *Bentley, Jr.*, 599 F. App'x at 396). Simply put, even though Plaintiff's membership was terminated, the Complaint is devoid of any factual allegations that would suggest Plaintiff's race was the "but-for" reason behind this termination. *See Veal,* 2022 WL 715712, at *4 (finding same); *cf.*, *Don v. Equinox Brickell, Inc.*, 2021 WL 2453150, at *2. Accordingly, Plaintiff's § 1981 discrimination claim based on the termination of his membership is **DISMISSED WITH PREJUDICE**.

**B. Puerto Rico State Law Claims**

Plaintiff also alleges claims under Puerto Rico state law,[6] namely, unlawful discrimination and retaliation on the basis of race in violation of the Puerto Rico Civil Rights Act, Law No. 131 of May 13, 1943, as amended, P.R. Laws Ann. tit. 1 § 13 ("Law 131"); negligence in hiring[7] and retention in violation of Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141,[8] as well as breach of contract. (**ECF No. 1**).

"District courts may exercise supplemental jurisdiction over state law claims that are so related to claims in the federal action that they form part of the same case or controversy under Article III of the United States Constitution." *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36 (1st Cir. 2020) (citing 28 U.S.C. § 1367(a)) (cleaned up). That said, First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." *Catala-Torres v. LifeLink Found., Inc.*, 21-cv-1201, 2022 WL 1620304, at *4 (D.P.R. May 23, 2022), *appeal dismissed*, 22-cv-1494, 2022 WL 18144098 (1st Cir. 2022) (citing *id.*). To that end, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Borrás-Borrero*, 958 F.3d at 37 (internal citations and quotations omitted). Because Plaintiff's § 1981 retaliation claim survives, the Court

---

[6] Under 28 U.S.C. § 1367(e) "the term 'State' includes … the Commonwealth of Puerto Rico" and will be referred to as such for the purposes of this Opinion and Order. 28 U.S.C. § 1367(e).

[7] Count III and Count V are identical. The Court will thus address Plaintiff's negligent hiring allegation under Count III and dismiss Count V.

[8] "Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code came into effect in 2020. Article 1536, however, contains the same elements as its predecessor, thereby leaving the tort statute practically unchanged." *Dumanian v. FirstBank Puerto Rico*, 22-cv-1543, 2024 WL 197429, at *3 (D.P.R. Jan. 17, 2024).

will exercise its jurisdiction over the aforementioned state law claims and address the Motion as to the sufficiency of their pleading.

### a. Count II: Puerto Rico Law 131

According to Puerto Rico Law 131, "[n]o person shall be denied in Puerto Rico any access, service, and equal treatment in public places and businesses and in the means of transportation because of political, religious, race, color or sex issues, or for any other reason not applicable to all person in general." *Medina-Rodríguez v. Fernández Bakery, Inc.*, 255 F. Supp. 3d 334, 344 (D.P.R. 2017) (citing P.R. Laws Ann. Tit. 1, § 13).

Plaintiff's claim pursuant to Law 131 is identical to his federal discrimination claim in this case. Therefore, for the reasons stated above, the Court **DISMISSES** this claim **WITH PREJUDIC**E. *Ocasio-Hernández v. Fortuño-Burset*, 09-cv-1299, 2012 WL 4062626, at *10 (D.P.R. Sept. 14, 2012), *aff'd*, 777 F.3d 1 (1st Cir. 2015) (holding same as it pertains to federal and state political discrimination claims).

With regards to Plaintiff's Law 131 retaliation claim, as Costco points out, it is unclear whether Law 131 supports a claim for retaliation. Absent authority to the contrary, the Court will not dismiss this claim at this juncture.

### b. Counts III and IV: Negligent Hiring and Retention Under Article 1802

Moving to Plaintiff's negligent hiring and retention claims under Article 1802, Plaintiff alleges that Costco was:

> deliberately indifferent, reckless, negligent and/or tacitly approved the AWM's conduct; and/or [that] [Costco] [] failed to create and/or have in place well-publicized and enforced anti-retaliation policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of retaliation; and/or by having actual knowledge of the retaliation of Plaintiff and failing to promptly and effectively act to stop it.

(**ECF No. 1 at 6 ¶ 37**). Costco argues because Plaintiff's discrimination claims fail, the negligent hiring and retention claims must fail as well. (**ECF No. 12 at 14**). The Court agrees. To the extent these claims are based on racial discrimination, they are **DISMISSED WITH PREJUDICE**. Because Costco has not moved for dismissal of Plaintiff's retaliation claim, to the extent they are based on the pending retaliation claims, these claims survive.

### c. Count VI: Breach of Contract

Finally, "[u]nder Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." *Xynergy Healthcare Cap. II LLC v. Municipality of San Juan*, 18-cv-1208, 2021 WL 318361, at *5 (D.P.R. Jan. 29, 2021) (citation omitted). Construing the Complaint liberally, the Court presumes the contract breach is the termination of Plaintiff's membership. However, as Costco correctly points out, the Complaint fails to allege that there was a breach of any contractual obligation on the part of Costco. Plaintiff's conclusory allegation that "[Costco] breached its contract with Plaintiff" does not suffice to withstand the instant Motion. Accordingly, this claim is **DISMISSED WITH PREJUDICE.**

### V. Conclusion

Accordingly, Costco's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's 42 U.S.C. § 1981 and Law 131 discrimination claims, Article 1802 claims based on discrimination, and breach of contract claim are **DISMISSED WITH PREJUDICE.** Plaintiff's § 1981 and Law 131 retaliation claim, as well as the Article 1802 claims based on the alleged retaliation remain pending.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of June, 2024.

>   **/s/ María Antongiorgi-Jordán**
>   **MARIA ANTONGIORGI-JORDAN**
>   **UNITED STATES DISTRICT JUDGE**